IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SANDRA R. WOODING, | ) | |
| | ) | Case No. 4:10CV00006 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R&R") of the United States Magistrate Judge recommending that I remand the case to the Commissioner of Social Security ("Commissioner") for further proceedings. The Commissioner filed objections to the Magistrate's R&R and the Plaintiff responded to those objections in turn. I have reviewed the Magistrate Judge's recommendation, Defendant's objections, Plaintiff's response and relevant portions of the record. For the reasons stated below, I will **REJECT** the Magistrate Judge's R&R and **GRANT** Defendant's Motion for Summary Judgment.

<u>I</u>

A

Plaintiff Sandra R. Wooding is a 52-year-old female who is five feet, four inches tall and weighs 260 pounds. Ms. Wooding alleges disability due to numerous ailments beginning December 31, 2002. (R. 13, 20–22, 94–107.) On May 2, 2007, Plaintiff filed an application under Titles II and XVI of the Social Security Act (the Act) for a period of disability, disability insurance benefits (DIB) and supplemental security income (SSI). (R. 13, 94–107.) The Social

Security Administration (SSA) denied Plaintiff's applications both initially and on reconsideration. (R. 13, 48, 56.). Plaintiff then timely filed a request for a hearing before an Administrative Law Judge (ALJ), which was held on August 18, 2009, in Danville, VA. (R. 13, 5–39.) The ALJ, following the requisite five-step evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a), concluded that Plaintiff was not disabled under the Act. (R. 14–19). Specifically, the ALJ found as follows: (1) Plaintiff was not engaged in substantial gainful activity prior to her claimed disability onset date; (2) Plaintiff suffered severe impairments from degenerative back disorder/osteoarthritis, peripheral neuropathy, diabetes, high blood pressure, restless leg syndrome and obesity, and non-severe impairments of shoulder pain, osteoarthritis, and gastroesophageal reflux disease; (3) these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); and (5) Plaintiff is unable to perform any past relevant work under 20 C.F.R. §§ 404.1565 and 416.965. (R. 15–19.) The ALJ issued his written decision on September 23, 2009.

On September 29, 2009, Plaintiff filed a Request for Review of the ALJ's decision with the SSA's Appeals Council. (R. 5–9.) Plaintiff later supplemented her Request with a new Vocational Evaluation Report from Dr. Barry S. Hensley, a Licensed School Psychologist, based on his independent examination of Plaintiff, dated October 21, 2009. (R. 8.) Dr. Hensley concluded that—contrary to the ALJ's findings—Plaintiff "is vocationally disabled." (R. 347–55.) On January 4, 2010, the Appeals Council denied Plaintiff's Request for Review, finding no basis to change the ALJ's decision, and made Dr. Hensley's report part of the record. (R. 1–4.) Following the Appeals Council's unfavorable decision, Plaintiff instituted the present civil action

in this Court. (Complaint, Feb. 12, 2010, ECF No. 3.) I referred the case to Magistrate Judge B. Waugh Crigler (Order, July 8, 2010, ECF No. 9), who considered Plaintiff's and Commissioner's cross Motions for Summary Judgment. (P.'s Mot. Summ. J., July 22, 2010, ECF No. 11, D.'s Mot. Summ. J., Aug. 19, 2010, ECF No. 13.) Magistrate Judge Crigler then issued his Report and Recommendation (R&R) on September 16, 2010, concluding that the case should be remanded to the Commissioner for further proceedings in light of Dr. Hensley's report. (R&R, Sept. 16, 2010, ECF No. 15.) The Commissioner timely filed an objection to the R&R (D.'s Obj. to R&R, Sept. 27, 2010, ECF No. 16.) and Plaintiff filed a response the next day. (P.'s re. to D's Obj. to R&R, Sept. 28, 2010, ECF No. 17.)

B

Magistrate Judge Crigler recommended that the case be remanded to the Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g). (R&R 1.) Judge Crigler found that Dr. Hensley's Vocational Evaluation Report constituted new, material evidence that would have altered the ALJ's decision. (R&R 3–5.) Dr. Hensley believed that Plaintiff had no marketable or transferable skills, that she would be unable to perform her past relevant work due to her marginal educational level, that she had severe medical difficulties, and was a person approaching advanced age. (R. 350.) Adding to Plaintiff's ailments detailed by the ALJ, Dr. Hensley observed that Plaintiff had asthma, visual defects, and additional psychological impairments. (*Id*.) Whereas the ALJ found that Plaintiff could perform "the full range of sedentary work" (R. 13), Dr. Hensley found that Plaintiff "would be unable to perform any . . . work which exists in the national economy." (R. 354.) As such, Magistrate Judge Crigler reasoned as follows:

The undersigned finds that the additional evidence was "new" in that it

3

> was neither duplicative or cumulative of the any other [sic] evidence in
> the record and relates to plaintiff's vocational capacity prior to the Law
> Judge's September 23, 2009 decision.  The undersigned also finds that
> the evidence is "material."  Namely, if the Law Judge had accepted
> Hensley's evaluation and opinion that plaintiff was 'vocationally
> disabled,' it likely would have altered his decision.  Finally, this
> evidence would be dispositive unless countervailed by other substantial
> evidence which appears absent from the record before the Law Judge.

(R&R 4–5.)

## II

### A

42 U.S.C. § 405(g) defines the actions this Court may take when a social security claimant appeals an unfavorable administrative decision.  Under sentence four, this Court has the authority to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (sentence four).  Alternatively, the sixth sentence of that section gives this Court the power to remand the case for "additional evidence to be taken" without passing judgment on the underlying administrative decision.  42 U.S.C. § 405(g) (sentence six).

The Magistrate Judge recommended that I remand the case under sentence four due to the presence of new evidence, but did not recommend that I pass judgment on the merits of the administrative decision.  That recommendation conflates the options available to this Court.  If I follow the Magistrate Judge's recommendation to remand based on the presence of new evidence alone, I should do so under sentence six, not four.  Alternatively, to effectuate a sentence four remand, I must first examine the underlying administrative decision using the appropriate standard of review and either reverse or modify that judgment before remanding for further

proceedings.  Because the Magistrate Judge's recommendation appears to be a sentence six

remand in all aspects but its title, I will treat is as such.

Whether I should accept the new information—I hesitate to call it evidence—of Dr.

Hensley presents somewhat of a conundrum.  This is because the Council placed the information

in the administrative record and under the 4th Circuit's ruling in *Wilkins v. Secretary,*

*Department of Health and Human Services*, 953 F.2d 93 (4th Cir. 1991) this Court must consider

the entire record even though the record is silent as to how the Council considered the

information and what, if any, weight they gave to it.[1]  *Id*. at 96.  The confounding factor,

however, is that in a sentence six remand I must determine if the "new evidence" meets the

requirements of sentence six.  One of the requirements is that the plaintiff show "good cause" for

the late filing of the new evidence—a finding that the Council was not required to make.[2]

Plaintiff argues that Dr. Hensley's vocational report was unavailable at the time of the

---

[1]  Though I am bound by *Wilkins*, I expressed concerns with it in *Riley v. Apfel*, 88 F.Supp.2d
572 (W.D.Va. 2000), noting that

> I agree with Judge Jones [] that the regulations do not explicitly require
> the Appeals Council to provide written findings with respect to any new
> evidence . . . I must not ignore, however, the policy reasons for deferring
> fact finding to an administrative agency and then subjecting that fact
> finding to deferential review by the courts.  For this court to conduct a
> meaningful review the administrative agency must do more than offer
> scant discussion of evidence that even it deemed worthy of consideration
> when rendering its decision.

*Riley*, 88 F.Supp.2d at 580.

[2] In pertinent part, 42 U.S.C. § 405(g) (sentence six) provides:

> The court ... may at any time order additional evidence to be taken before
> the Commissioner of Social Security, but only upon a showing that there
> is new evidence which is material and that there is good cause for the
> failure to incorporate such evidence into the record in a prior
> proceeding[.]

42 U.S.C. § 405(g).

hearing and that unavailability constitutes good cause.  (P.'s re. to D's Obj. to R&R 1.)  Because the vocational testimony at the hearing was inaccurate, Plaintiff contends, the need for an alternate evaluation did not arise until after the hearing's conclusion.  (*Id*.)  Plaintiff stresses that "the Hensley evaluation would likely be dispositive unless counter vailed by other substantial evidence apparently absent from the record before the ALJ."  (*Id*. at 2.)

I find that the Plaintiff has failed to show good cause and the information presented by Dr. Hensley's report should not be remanded for the ALJ to consider.

B

In addition to the good cause requirement, sentence six remands only lie where the evidence is also new and material within the meaning of 42 U.S.C. § 405(g).

The First circuit encountered a remarkably similar set of facts and issues in *Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136 (1st Cir. 1987).  There, the *pro se* claimant filed for DIB for his low back pain.  He obtained a hearing in front of an ALJ, but was denied benefits because the ALJ found that claimant retained residual functional capacity.  *Id*. at 138–39.  Claimant then retained counsel and appealed the ALJ's decision to the appropriate district court, seeking a remand in light of new evidence.  *Id*. at 139.  Much like the present matter, the new evidence took the form of a health and vocational evaluation performed after the ALJ issued his opinion.  *Id*.

Regarding newness and materiality, the First Circuit first observed that there was substantial evidence in the record to support the ALJ's findings and that the new evaluation was merely a new opinion based on the same underlying facts.  *Id*. at 140–41.  While the doctor's evaluation may have created conflicts, the court observed the well established rule that "[c]onflicts in the evidence are, assuredly, for the Secretary—rather than the courts—to resolve."

*Id*. at 141 (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971)). Thus, where the new evidence is cumulative and the ALJ's findings are supported by substantial evidence, the mere existence of a new *opinion* does not meet the newness and materiality bars.

Regarding good cause, the First Circuit focused solely on Plaintiff's *pro se* status at the administrative hearing. *Id*. at 141. In the present matter, Plaintiff Wooding was represented at the ALJ hearing. (R. 17.) This distinction does not work in Plaintiff Wooding's favor. The First Circuit found that Plaintiff Evangelista's *pro se* status was insufficient to constitute good cause for failure to timely produce a medical opinion. *Evangelista*, 826 F.2d at 142. Where, as here, Plaintiff retained counsel for the ALJ hearing, good cause is a higher bar.

The Seventh Circuit also encountered a similar case in *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997). Alfred Perkins was unsuccessful at the administrative level in his DIB petition for his alcoholism, high blood pressure, heart trouble and poor vision. *Perkins*, 107 F.3d at 1292. Perkins sought review from the Appeals Council and submitted a mental capacity evaluation— taken after the ALJ hearing—as "new" evidence. *Id*. The Appeals Council denied review. *Id*. Perkins appealed to the district court, which adopted the Magistrate Judge's R&R that summary judgment be granted for the Commissioner. *Id*. at 1292–93. In his appeal to the Seventh Circuit, Perkins argued, *inter alia*, that the district court should have granted his request for a remand based on his "new" mental capacity evaluation. *Id*. at 1296.

The Seventh Circuit rejected Perkins argument that his evidence entitled him to a sentence six remand. *Id*. "Even though Dr. Reich's evaluations were technically not in existence at the time of the earlier hearing, he based his conclusions on evidence that had long been available." *Id*. Thus, the evaluation did not constitute new evidence. *Id*. Moreover, even

assuming the evidence was both new and material, Perkins failed to demonstrate good cause for his failure to produce it earlier. That the new report was devoted, in part, to critiquing the ALJ's opinion—which obviously could not have occurred prior to the hearing—did not constitute good cause. *Id*. "[S]uch a rule would amount to automatic permission to supplement records with new evidence after the ALJ issues a decision in the case, which would *seriously undermine the regularity of the administrative process*." *Id*. (emphasis added).

The Fourth Circuit has suggested a similarly high bar for establishing "good cause" for a sentence six remand. In *Hammond v. Apfel*, 2001 WL 87460 (4th Cir. 2001) (Not Selected for Publication in the Federal Reporter), Plaintiff failed to obtain DIB through agency proceedings for urinary frequency and back-related problems. *Hammond*, 2001 WL 87460 at *1. After the ALJ hearing but prior to the Appeals Council's eventual rejection of his request for review, Plaintiff began treatment with a board certified urologist. *Id*. The urologist found that the urinary problems were related to Plaintiff's back issues and submitted evidence that the Fourth Circuit held was both "new" and "material." *Id*. at *2. Nonetheless, the Court reasoned, Plaintiff "has not explained, and the record is void of any reason, why . . . his workman's compensation would not cover treatment earlier." *Id*. Therefore, the court concluded, "we find that Hammond has failed to demonstrate 'good cause' to excuse his failure to submit the urologist's reports." *Id*.

By comparison, three cases where the court granted remand on the basis of new evidence further clarify the issues. In *Sears v. Bowen*, 840 F.2d 394 (7th Cir. 1988), Plaintiff, who suffered from glaucoma, failed to secure benefits at the administrative level. Plaintiff filed suit in district court, and, nearly a year after the Appeals Council's decision, began seeing a new doctor for glaucoma and psychiatric problems related to his nerves. *Sears*, 840 F.2d at 397. The district court denied Plaintiff's request for remand based on the doctor's evaluations. *Id*. In

reversing the district court, the Seventh Circuit compared *Sears* to the First Circuit's decision in *Evangelista*, noting the doctor "was treating Sears; it is evident from the record that *he was not an expert retained solely for the purpose of establishing a disability* . . . these facts convince us that this is not a case of 'sandbagging' by a claimant who loses and hopes to get another chance . . . ." *Id*. at 399–400 (emphasis added).

Likewise, the Fourth Circuit ordered remand based on new evidence in both *Cox v. Heckler*, 770 F.2d 411 (4th Cir. 1985) and *Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir. 1983). In *Cox*, similar to all the cases discussed above, Plaintiff obtained a new medical evaluation subsequent to an unfavorable outcome at the administrative level for his DIB claim for back, lung, and blood pressure problems. *Cox*, 770 F.2d at 412  Here, though, the District Court initially ordered a remand based on the new evidence, the ALJ then found Plaintiff to be disabled, but the Appeals Council reversed the ALJ's decision to award benefits. *Id*.  Plaintiff then obtained further new evidence, but this time the District Court denied Plaintiff's motion to remand, concluding that the new reports were merely cumulative. *Id*.  In reversing the District Court, the Fourth Circuit reasoned, "[t]he record in this case unequivocally demonstrates that claimant has a progressively deteriorating lung condition . . . ." *Id*. at 413.  Because Plaintiff's condition was worsening, the new evidence so demonstrating was not cumulative and required remand.

Finally, in *Mitchell v. Schweiker*, Plaintiff, age 35 with an IQ of 58 and a fifth grade education, sought DIB and SSI based on her severe depression and a nervous condition. *Mitchell*, 699 F.2d at 186.  Plaintiff failed to secure benefits at the administrative level and the district court entered summary judgment for the Commissioner. *Id*. 187.  While her Fourth Circuit appeal was pending, Plaintiff suffered another bout of severe depression which required

hospitalization. *Id.* Plaintiff offered that episode, with its accompanying reports, as reason for remand. *Id.* In his earlier decision that Planitiff was not disabled, the ALJ had reasoned that the bouts of depression "would not be permanently disabling for a year or more." *Id.* at 188. The Fourth Circuit concluded that the most recent hospitalization was material new evidence because it "is evidence of the continuity which the ALJ found lacking . . . ." *Id.* at 189.

C

In the present matter, Plaintiff has not met her burden. Plaintiff did not request that the ALJ hold the record open so that she could submit additional evidence. The ALJ asked Plaintiff and her counsel, on separate occasions, whether either had any further questions or issues to raise, and both answered in the negative. (R. 38.) Yet many of the issues Dr. Hensley observed "developed about six years" before the ALJ hearing. (R. 350, 352.) Also damaging is Plaintiff's own admission that Dr. Hensley's report was submitted simply to provide an after-the-fact contradiction of the ALJ's findings. In Plaintiff's Response to Defendant's Objections to the Magistrate Judge's Report and Recommendations, Plaintiff states:

> Defendant erroneously concluded this information was available at the time of the hearing. It was not nor could it be. The vocational testimony at the hearing was inaccurate. Only by obtaining a thorough vocational evaluation subsequent to the hearing could the Plaintiff rebut the erroneous vocational testimony at the hearing.

(P.'s Re. to D.'s Obj. to Magistrate Judge's R&R 1, ECF No. 17.) Of course, Plaintiff's argument is flawed and contrary to precedent. Not only could Plaintiff have done her due diligence and obtained her evidence prior to the hearing, the law requires her to do just that, and provide good cause if she did not. 42 U.S.C. § 405(g). Good cause does not exist based solely on Plaintiff's after-the-fact desire to contradict the Vocational Expert's opinion and the ALJ's subsequent findings. *Evangelista*, 826 F.2d at 142, *Perkins*, 107 F.3d at 1296, *Hammond*, 2001

10

WL 87460 at *2.  The facts of this case do not justify a sentence six remand.

### III

But even considering the report, which I feel that *Wilkins* requires me to do because it is a part of the record, it does not change the outcome of the case.  At bottom, my task is to determine whether the ALJ's decision is supported by substantial evidence and I find that it is.  I find Dr. Hensley's report is largely unacceptable; it doesn't alter the evidence on which the ALJ made his findings.

First I note that Hensley's expertise is that of a school psychologist.  He is neither a medical doctor nor a vocational expert yet he offers opinions in both fields.

Dr. Hensley based his opinion that Plaintiff is vocationally disabled on her diabetic condition, peripheral neuropathy, asthma, elevated blood pressure, restless leg syndrome, obesity, back disorder and poor eyesight.  (R. 351.)  Additionally, Dr. Hensley noted that Plaintiff has begun to develop memory deficits, irritable mood fluctuations and depression, and that her generational educational level was less than grade six.  (R. 351–53.)  Doctor Hensley reported that these problems developed as many as six years before the ALJ hearing.  (*Id.* at 352.)  Because of her health problems and her low level of education, Dr. Hensley concluded, Plaintiff is unable work competitively.  (R. 354.)  The ALJ considered largely the same evidence, but reached a different opinion.  The ALJ and Dr. Hensley differ with regards to Plaintiff's alleged visual impairments, psychiatric issues, asthma and educational deficits.

At the hearing, the Medical Expert (ME) testified that the record demonstrated Plaintiff's eyesight was, at the time, 20/20.  (R. 29.)  This testimony was partially correct.  The record shows that, based on Plaintiff's most recent eye exam, her vision is 20/20 through the use of a

"+2.25 near addition lens."  (R. 284.)  Aside from that mild corrective requirement, her eyes were otherwise normal as of September 10, 2007.  (*Id*., R. 115.)  This analysis contradicts Plaintiff's allegations in her disability claims, where she frequently stated that her eyesight prevents her from reading and gives her headaches.  (R. 51, 130, 153, 281.)  Despite these complaints, Plaintiff did not dispute the ME's testimony at the hearing that her eyesight was 20/20.  The ALJ, then, has already confronted conflicting evidence regarding Plaintiff's eyesight: namely, her allegations in her SSA filings and her eye doctor's reports in her medical records.  If Dr. Hensley's report offered new medical evaluations of Plaintiff's eyesight, such evidence may indeed be material.  Instead, the report simply notes, "Ms. Wooding states she is unable to work due to . . . visual deficits" which "are becoming worse and she has no funds for evaluation or treatment." (R. 350.)  Dr. Hensley, then, appears to have simply reconveyed statements quite similar to Plaintiff's original SSA filings, which the ALJ already considered.  This evidence is cumulative and the ALJ's decision not to list Plaintiff's eyesight as an impairment appears supported by substantial evidence.

Likewise, Plaintiff's medical history reports reveal that she sometimes complained of depression.  (R. 217–20, 278.)  Notes from an April, 2007, examination at Family Healthcare of Gretna detail Plaintiff's positive response to anti-depressant treatment.  (R.  217).  Plaintiff did not raise the issue of her depression at the ALJ hearing and the ALJ had access to the relevant medical records.  Further, In an agency questionnaire, Plaintiff stated that she sometimes forgets to pay bills, or how much money she owes (R. 151) but does not require any "special reminders" to take medicine.  (R. 149.)  Dr. Hensley's report touches on Plaintiff's memory loss as well, stating that she "forgets conversations, appointments, and her intentions."  (R. 351.)  Again, Plaintiff did not raise this issue of her memory loss at the ALJ hearing and the ALJ had access to

12

the relevant medical records. As such, the ALJ has already considered this conflict, based his decision on substantial evidence, and therefore the report is cumulative.

Regarding Plaintiff's asthma, none of Plaintiff's medical records evidence significant respiratory issues. Indeed, notes from an October, 2008 examination read, "[r]espiratory: no shortness of breath, no persistent cough, no chest congestion." (R. 298). A May, 2007, disability report from the SSA—where an SSA agent made in-person contact with Plaintiff— notes Plaintiff had no problems breathing, reading, standing, walking, or writing. (R. 115.) In contrast, Dr. Hensley reports, "Ms. Wooding states she can walk about 75 feet before she loses her breath." (R. 351.) This one sentence is the entirety of Dr. Hensley's analysis concerning Plaintiff's asthma in a six page report. The inference is unavoidable that the doctor is merely relaying Plaintiff's words through his own letterhead. Insofar as Dr. Hensley is merely restating Plaintiff's own complaints, the ALJ already weighed Plaintiff's subjective claims against the medical evidence, finding "claimant's statements concerning . . . these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 14.)Additionally, Dr. Henlsey is a Licensed School Psychologist. His opinion regarding Plaintiff's physical ailments would command less weight than Plaintiff's own medical records. The ALJ's decision not to list any respiratory issues as impairments in his findings is supported by substantial evidence.

Dr. Hensley's evaluation of plaintiff's relative educational level is more substantive and in keeping with his speciality. His ultimate conclusion that Plaintiff is disabled is heavily based on her low score on a Wonderlic Basic Skills Test he administered. (R. 354.) Her test results led him to reason that Plaintiff could not perform her past relevant work or sedentary work "because she does not have the educational levels necessary to read training manuals and . . . understand

13

written directions." (R. 354.) This finding is contradicted in the record: Plaintiff obtained her general equivalency diploma (GED). (R. 21.) The ALJ noted Plaintiff's high school equivalency in his opinion. (R. 15.) Dr. Hensley's conclusion that Plaintiff could not perform her past relevant work or similar sedentary work due to her educational level is puzzling. Plaintiff, in fact, *did* perform her past relevant work as a security guard and a Certified Nurse's Assistant. (R. 119.) If her educational level was not an impediment to her original performance, the ALJ was certainly justified to conclude, based on substantial evidence, that it would not be so subsequently.


## IV

For the reasons stated above, I will **REJECT** the Magistrate Judge's Report and Recommendation and **SUSTAIN** the Defendant's objections. I will **GRANT** the Defendant's Motion for Summary Judgment, and this case shall be **DISMISSED** from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 29th day of October, 2010.


s/Jackson L. Kiser
Senior United States District Judge